FILED IN OPEN COURT

AUG 24 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:12cr105 |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS E. ARNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt, by proof of the following facts, among others:

1. THOMAS E. ARNEY owned and operated a residential development company, several restaurants, rental properties, and a car restoration business. THOMAS E. ARNEY leased commercial office space from the Bank of the Commonwealth (the "Bank"); his principal place of business was located on the third floor of the Bank's headquarters located at 403 Boush Street in Norfolk, Virginia.

2. The Bank of the Commonwealth, headquartered in Norfolk, Virginia, was the sole business of Commonwealth Bankshares, Inc., whose securities were traded on the Nasdaq Stock Exchange under trading symbol "CWBS." The Bank was a financial institution with deposits insured by the Federal Deposit Insurance Corporation.

3. EDWARD J. WOODARD served as the Bank's Chief Executive Officer and Chairman of its Board of Directors for over three decades until he was forced to step down as

Chairman of the Board in or about April 2010, and then ultimately forced to retire in or about December 2010.

4. SIMON HOUNSLOW was employed by the Bank as an Executive Vice President and Chief Lending Officer until the Bank closed in or about September 2011.

5. STEPHEN G. FIELDS was employed by the Bank as an Executive Vice President and Commercial Loan Officer until he was terminated in or about December 2010.

6. THOMAS E. ARNEY performed favors for these Bank insiders in exchange for preferential treatment to the detriment of the Bank. THOMAS E. ARNEY also helped these Bank insiders fraudulently conceal the extent of the Bank's non-performing assets by purchasing Bank-owned property again to the detriment of the Bank.

7. In or about January 2008, THOMAS E. ARNEY guaranteed over $7 million in loans at the Bank. Although most of these loans required interest-only payments, THOMAS E. ARNEY had difficulty keeping all the loans current.

8. From on or about April 23, 2008 through on or about June 30, 2008, STEPHEN G. FIELDS caused the Bank to fund a $175,000 loan knowing that the guarantor was a nominee borrower for THOMAS E. ARNEY. Indeed, the collateral securing the loan was owned by THOMAS E. ARNEY and his wife. Thereafter, THOMAS E. ARNEY used these loan proceeds to cover expenses for his other businesses, and make over $54,000 in payments on past-due loans at the Bank and other financial institutions. In or about April 2011, as part of a debt consolidation plan with the Bank, THOMAS E. ARNEY acknowledged that he was the true guarantor of this loan.

9. In or about May 2008, at the request of EDWARD J. WOODARD and STEPHEN G. FIELDS and in an effort to disguise the Bank's involvement, THOMAS E. ARNEY was to

2

purchase shares of Bank of Currituck stock and obtain a package of information only available to shareholders. THOMAS E. ARNEY informed EDWARD J. WOODARD and STEPHEN G. FIELDS that he was able to purchase 60 shares for $111,000. Nevertheless, on or about May 7, 2008, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund an $185,000 loan to THOMAS E. ARNEY with collateral listed as 100 shares of Bank of Currituck stock. That same day, STEPHEN G. FIELDS signed a cashier's check payable to Bank of Currituck shareholder J.O. for $111,000. Thereafter, THOMAS E. ARNEY used the remaining $74,000 for his own personal purposes. On or about June 1, 2011, the Bank charged off $111,000 of this loan as loss.

10. On or about May 30, 2008, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund a $339,000 loan to THOMAS E. ARNEY for the purpose of servicing "real estate investments." Instead, STEPHEN G. FIELDS and THOMAS E. ARNEY used $282,461.39 in loan proceeds to make payments on 11 of THOMAS E. ARNEY's past-due loans at the Bank, and $39,064.16 in loan proceeds to pay off negative balances in his demand deposit accounts. The conspirators knew that these loan proceeds were to be used solely to service real estate investments, including the payment of real estate taxes and insurance.

11. On or about June 13, 2008, at the request of EDWARD J. WOODARD, THOMAS E. ARNEY purchased a condominium located at 388 Boush Street in Norfolk, Virginia. The condominium was owned by EDWARD J. WOODARD. From on or about May 28, 2008 through on or about June 13, 2008, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund a $433,000 loan to facilitate this fraudulent transaction. THOMAS E. ARNEY falsely represented that he intended to use the condominium as a second home. In fact, THOMAS E. ARNEY purchased the condominium as a favor to EDWARD J.

3

WOODARD, and in return for preferential treatment on his loans at the Bank. EDWARD J. WOODARD made a $52,877.45 profit from the sale of his condominium. On or about June 1, 2011, the Bank charged off approximately $48,000 of this loan as a loss.

12. From on or about September 30, 2008 through on or about March 23, 2009, STEPHEN G. FIELDS and SIMON HOUNSLOW caused the Bank to fund a $150,000 line of credit knowing that the guarantor was a nominee borrower for THOMAS E. ARNEY, and that a portion of the loan proceeds would be used for THOMAS E. ARNEY's benefit. In fact, the nominee borrower's financial statement attached to the application for this loan indicated that he/she had a negative net worth of $7,534 at the time the loan was funded. Thereafter, THOMAS E. ARNEY used these loan proceeds to cover expenses for his other businesses, make payments on past-due loans at the Bank and elsewhere, and pay off over $22,000 in negative balances in his demand deposit accounts. In or about April 2011, as part of a debt consolidation plan with the Bank, THOMAS E. ARNEY acknowledged that he was the true guarantor of this loan.

13. In or about April 2009, the Bank fully funded a $5.72 million loan to THOMAS E. ARNEY for the construction of a 27-unit condominium project known as Widgeon Point in Norfolk, Virginia. At the time, the project was not yet complete. Accordingly, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to distribute proceeds from the sales of condominium units to THOMAS E. ARNEY before the loan was paid off. Thereafter, THOMAS E. ARNEY, and others known and unknown, wrote checks to subcontractors for services purportedly rendered on the construction project. In fact, several of these subcontractors endorsed and cashed these checks, which were authorized by STEPHEN G. FIELDS, but returned the majority of the money to THOMAS E. ARNEY at his behest. THOMAS E.

4

ARNEY used sale proceeds to make payments on past due loans at the Bank and elsewhere, and for other personal purposes.

14. On or about November 30, 2009, the Bank established a $995,000 reserve for losses anticipated from the Arney relationship.

15. Nevertheless, on or about December 23, 2009, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund a $2,175,000 loan to THOMAS E. ARNEY for the purchase of Bank-owned property located at 251 Granby Street in Norfolk, Virginia. EDWARD J. WOODARD and STEPHEN G. FIELDS applied $1,966,801 of the proceeds to pay off the underlying loan, and they advanced an additional $157,718.40 supposedly for "working capital" and "to purchase two antique cars from BOC customer." Instead, THOMAS E. ARNEY used the proceeds to make payments on his other loans at the Bank, to pay off a negative balance in his demand deposit account, and for other personal purposes. On or about June 1, 2011, the Bank charged off approximately $692,700 of this loan as a loss.

16. On or about December 30, 2009, THOMAS E. ARNEY, through nominee borrowers, purchased property located at 1128 Battlefield Boulevard in Chesapeake, Virginia. The owner of the property had not made a payment on his loan at the Bank, which was secured by this property, since November 2006. EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund a $150,000 loan to facilitate this fraudulent transaction. This new loan simply paid off the old loan, and again the Bank ostensibly converted a non-earning asset into an earning asset prior to the end of the year. In or about April 2011, as part of a debt consolidation plan with the Bank, THOMAS E. ARNEY acknowledged that he was the true guarantor of this loan.

5

17. On or about February 26, 2010, EDWARD J. WOODARD and STEPHEN G. FIELDS caused the Bank to fund a $100,000 line of credit knowing that the guarantors were nominee borrowers for THOMAS E. ARNEY, and that a portion of the loan proceeds would be used for THOMAS E. ARNEY's benefit. The line of credit was supposedly secured by $140,000 worth of receivables and inventory. In fact, EDWARD J. WOODARD, STEPHEN G. FIELDS and THOMAS E. ARNEY knew that the loan was not sufficiently secured by collateral.

18. THOMAS E. ARNEY used these loan proceeds to cover expenses for his other businesses, make payments on past-due loans at the Bank, including a delinquent payment on the $2,175,000 loan he obtained just two months earlier, and to make $35,000 in loan payments to other financial institutions. For example, on or about March 2, 2010, THOMAS E. ARNEY used proceeds from this loan to purchase a cashier's check from the Bank in the amount $20,098. THOMAS E. ARNEY then caused the deposit of this cashier's check into a demand deposit account (account number xxxx900) at the Bank of Hampton Roads. At the time, this demand deposit account had a negative balance of $11,001.89. In or about April 2011, as part of a debt consolidation plan, THOMAS E. ARNEY acknowledged that he was the true guarantor of this loan.

19. From in or about March 2010 and continuing through in or about July 2010, EDWARD J. WOODARD, SIMON HOUNSLOW and STEPHEN G. FIELDS caused the Bank to pay $150,176 to THOMAS E. ARNEY for improvements he supposedly made at a failed condominium project financed by the Bank. These payments were booked into the Bank's accounts receivable ledger. EDWARD J. WOODARD, SIMON HOUNSLOW and STEPHEN G. FIELDS caused the Bank to fund these supposed improvements without verifying that the work was actually completed or the costs itemized in invoices were accurate.

20. On or about July 2, 2010, as the Bank's financial condition continued to deteriorate, the Bank entered into a Written Agreement (the "Agreement") with its regulators, the Federal Reserve and the Virginia State Corporation Commission. Among other things, the Agreement prohibited the Bank from extending, renewing, or restructuring any loans to specific troubled borrowers without the explicit approval of the Bank's Board of Directors. THOMAS E. ARNEY was among the specified troubled borrowers.

21. In or about July 2010, STEPHEN G. FIELDS informed THOMAS E. ARNEY that the Bank's regulators prohibited the Bank from extending THOMAS E. ARNEY any new loans.

22. Nevertheless, on or about August 31, 2010, EDWARD J. WOODARD, SIMON HOUNSLOW and STEPHEN G. FIELDS caused the Bank to fund a $325,000 loan to THOMAS E. ARNEY, through nominee borrowers, for the purchase of Bank-owned property located at 763-765 Granby Street in Norfolk, Virginia. In doing so, EDWARD J. WOODARD, SIMON HOUNSLOW and STEPHEN G. FIELDS, aided and abetted by THOMAS E. ARNEY, mislead their regulators and concealed their violation of the Written Agreement.

23. Thereafter, EDWARD J. WOODARD, SIMON HOUNSLOW and STEPHEN G. FIELDS applied $200,000 of the proceeds to pay off the underlying loan, and they approved an additional $125,000 supposedly to pay for improvements to the property. Instead, THOMAS E. ARNEY used a portion of the loan proceeds to make payments on his other loans at the Bank, and for other personal purposes. In or about June 2011, as part of a debt consolidation plan with the Bank, THOMAS E. ARNEY acknowledged that he was a true guarantor of the loan.

24. On or about September 23, 2011, the State Corporation Commission closed the Bank, and the Federal Deposit Insurance Corporation placed it into receivership.

7

The defendant acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this matter.

Neil H. MacBride
United States Attorney

By: *Katherine Lee Martin*
Katherine Lee Martin
Assistant United States Attorney
United States Attorney's Office
Main Street Centre
600 E. Main Street, Suite 1800
Richmond, Virginia 23219-2447
Phone: (804) 819-5400
Fax: (804) 819-7417
katherine.martin@usdoj.gov

By: *Melissa E. O'Boyle*
Melissa E. O'Boyle
Assistant United States Attorney
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Phone: (757) 441-6331
Fax: (757) 441-6689
melissa.oboyle@usdoj.gov

By: *Uzo Asonye by KRM*
Uzo E. Asonye
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: uzo.asonye@usdoj.gov

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

THOMAS E. ARNEY
Defendant

I am THOMAS E. ARNEY's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Melvin Radin
Counsel for the Defendant